1
2
3
4

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

5

*Attorney for Plaintiff*

6

*[Additional Counsel on Signature Page]*

7

8
9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

11

RONALD A. SCHOEN, Individually and on
Behalf of All Others Similarly Situated,

Case No.

12

Plaintiff,

13

v.

CLASS ACTION

14

EIGER BIOPHARMACEUTICALS, INC.,
DAVID A. CORY, and SRIRAM RYALI,

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

15

16

Defendants.

DEMAND FOR JURY TRIAL

17

18

19

20

21

22

23

24

25

26

27

Plaintiff Ronald A. Schoen ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Eiger BioPharmaceuticals, Inc. ("Eiger" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Eiger securities between March 10, 2021 and October 4, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Eiger is a commercial-stage biopharmaceutical company that focuses on the development and commercialization of targeted therapies for rare and ultra-rare diseases.

3. Eiger's product candidates include, among others, peginterferon lambda. Peginterferon lambda is being evaluated for, *inter alia*, the treatment of COVID-19 in the *TOGETHER* study, which is an independent multi-center, investigator-sponsored, randomized, placebo-controlled adaptive platform Phase 3 study evaluating multiple therapeutics in newly diagnosed, high-risk, non-hospitalized patients with mild-to-moderate COVID-19. Peginterferon lambda was added to the *TOGETHER* study in May 2021.

4. In March 2022, based on the results of the *TOGETHER* study, Eiger announced that it would submit an Emergency Use Authorization ("EUA") request to the U.S. Food and Drug Administration ("FDA") for peginterferon lambda for the treatment of patients with mild-to-moderate COVID-19 (the "peginterferon lambda EUA").

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants

overstated Eiger's clinical and regulatory drug development expertise; (ii) Defendants failed to properly assess, and/or ignored issues with, the design of the *TOGETHER* study and its ability to support the peginterferon lambda EUA; (iii) there were issues with the conduct of the *TOGETHER* study and/or the *TOGETHER* study was not properly designed for the peginterferon lambda EUA in the current context of the pandemic; (iv) as a result, the FDA was unlikely to approve the submission of a peginterferon lambda EUA; (v) as a result of all the foregoing, peginterferon lambda's regulatory and commercial prospects for the treatment of COVID-19 were overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On September 6, 2022, Eiger issued a press release "provid[ing] an update on the status of its planned request for [EUA] of peginterferon lambda for the treatment of patients with mild-to-moderate COVID-19 based on its most recent communications with the [FDA]." Specifically, the Company announced that "[f]ollowing a cooperative and extensive pre-EUA information exchange with [the] FDA regarding the Phase 3 *TOGETHER* study of peginterferon lambda for COVID-19, the agency has indicated that it is not yet able to determine whether the criteria for the submission of an application and issuance of an EUA are likely to be met."

7.      On this news, Eiger's stock price fell $2.51 per share, or 29.36%, to close at $6.04 per share on September 6, 2022.

8.      Then, on October 5, 2022, Eiger announced that it would not seek an EUA request for peginterferon lambda after the FDA had "denied the request for a pre-EUA meeting." Specifically, the Company disclosed that, "[c]iting its concerns about the conduct of the *TOGETHER* study, [the] FDA concluded that any authorization request based on the[] data

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

[presented] is unlikely to meet the statutory criteria for issuance of an EUA in the current context of the pandemic."

9.     On this news, Eiger's stock price fell $0.37 per share, or 5.01%, to close at $7.02 per share on October 5, 2022.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Eiger is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Eiger securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Eiger is a Delaware corporation with principal executive offices located at 2155 Park Boulevard, Palo Alto, California 94306.  The Company's common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "EIGR".

17.     Defendant David A. Cory ("Cory") has served as Eiger's President and Chief Executive Officer at all relevant times.

18.     Defendant Sriram Ryali ("Ryali") has served as Eiger's Chief Financial Officer at all relevant times.

19.     Defendants Cory and Ryali are sometimes referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Eiger's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Eiger's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Eiger, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

21.     Eiger is a commercial-stage biopharmaceutical company that focuses on the development and commercialization of targeted therapies for rare and ultra-rare diseases.

22.     Eiger's product candidates include, among others, peginterferon lambda. Peginterferon lambda is being evaluated for, *inter alia*, the treatment of COVID-19 in the *TOGETHER* study, which is an independent multi-center, investigator-sponsored, randomized, placebo-controlled adaptive platform Phase 3 study evaluating multiple therapeutics in newly diagnosed, high-risk, non-hospitalized patients with mild-to-moderate COVID-19. Peginterferon lambda was added to the *TOGETHER* study in May 2021.

### **Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on March 10, 2021, the day after Eiger filed an annual report on Form 10-K with the SEC, during after-market hours, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 10-K"). With respect to Eiger's and Company management's clinical and regulatory drug development expertise, that filing stated, *inter alia*:

> We believe that our approach to clinical development . . . potentially reduces clinical risks and costs inherent in the drug discovery and development process. We have a highly experienced management team whose members have, in the course of their prior employment, participated in bringing more than 20 product candidates through regulatory approval and into commercialization. We plan to leverage our management team's breadth and depth of experience in clinical and regulatory drug development as well as market development and commercialization to identify potentially promising product candidates to address unmet medical needs.

24.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or Section 15(d) of the

6

Exchange Act" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.     On May 3, 2021, Eiger issued a press release announcing that peginterferon lambda would be added to the *TOGETHER* study, stating, in relevant part:

> *TOGETHER* is an ongoing, multi-center, investigator-sponsored, randomized, placebo-controlled Phase 3 study evaluating multiple therapeutics in newly diagnosed, non-hospitalized patients with COVID-19, and will now include an investigational arm of Lambda as a single subcutaneous dose.  The primary endpoint is a clinical outcome comparing emergency room visits and/or hospitalization in each active arm versus placebo.  Each arm targets enrollment of up to 800 patients at high risk for developing complications from progression of COVID-19, with planned interim analyses for futility in each arm. The *TOGETHER* platform study is currently recruiting at eleven sites in Brazil and may expand to include a site in Toronto, Canada.

26.     On May 6, 2021, Eiger issued a press release announcing its first quarter 2021 financial results and providing a business update, stating, among other things, that the *TOGETHER* study's "[e]ndpoints align with FDA Guidance for COVID-19 therapeutics[.]"

27.     On August 5, 2021, Eiger issued a press release announcing its second quarter 2021 financial results and providing a business update, including, among other developments, that the "Phase 3 *TOGETHER* study [is] enrolling patients across clinical sites in Brazil"; that Defendants expect an "[i]nterim futility data analysis potentially by end of 2021"; and that "[p]ositive data could support submission for emergency use authorization[.]"

28.     On September 20, 2021, Eiger issued a press release "announc[ing] that the Data Safety Monitoring Board (DSMB) recommended that investigators continue enrollment of the Peginterferon Lambda arm in the Phase 3 *TOGETHER* platform study."  That press release further stated, in relevant part:

> The per protocol interim futility analysis was based on a sample size of 453 patients, randomized 1:1 active treatment to placebo.
>
> *TOGETHER* is a multi-center, investigator-sponsored, randomized, placebo-controlled adaptive platform Phase 3 study evaluating therapeutics in newly

7

diagnosed, high-risk, non-hospitalized patients with COVID-19. The primary endpoint is a clinical outcome comparing emergency setting visits and/or hospitalization in each active arm versus placebo. The DSMB provides independent oversight for the trial and has previously discontinued five other therapeutics due to observed futility. The Peginterferon Lambda arm targets enrollment of up to 800 patients at high risk for developing complications from progression of COVID-19. The *TOGETHER* platform study is currently recruiting at twelve sites in Brazil.

29.     On March 10, 2022, Eiger issued a press release announcing its fourth quarter and full year 2021 financial results and providing a business update, including, among other developments, that peginterferon lambda showed "[n]ovel mechanism of action, agnostic to variants and mutations"; that the "*TOGETHER* Phase 3 study [is] fully enrolled" and "[i]ncludes unvaccinated and vaccinated patients across multiple variants"; and that "[t]opline data [is] planned in March 2022[.]"

30.     The same press release also quoted Defendant Cory, who stated that Defendants "expect 2022 to be a transformational year for Eiger with topline data planned from" *inter alia* "[t]he Phase 3 *TOGETHER* study of Peginterferon Lambda for COVID-19 [that] is expected to readout later this month" and that Defendants "look forward to reporting results from th[is] potentially registration enabling stud[y.]"

31.     Also on March 10, 2022, Eiger filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K"). With respect to the *TOGETHER* study's evaluation of peginterferon lambda as a treatment for COVID-19, that filing stated, in relevant part:

> Lambda is currently in an investigator sponsored Phase 3, multi-center, randomized, placebo-controlled adaptive platform study, called TOGETHER, evaluating therapeutics in newly diagnosed, high-risk, non-hospitalized patients with COVID-19 across twelve clinical trial sites in Brazil.
>
> The primary endpoint compares the number of emergency setting visits, hospitalizations, and/or deaths in treated patients versus placebo through Day 28. TOGETHER has completed enrollment of over 1,800 patients at high risk for developing complications from progression of COVID-19 randomized 1:1 lambda

vs. placebo. In December 2021, the Data Safety Monitoring Board (DSMB) has conducted a second per protocol interim futility analysis on 1,003 patients and recommended continuation of the study. Data from this study is expected in first quarter 2022.

We have an open [Investigational New Drug Application] for lambda in COVID-19. Pending positive results from the Phase 3 TOGETHER study, we plan to submit an [EUA] request to the FDA this year.

32.     The 2021 10-K also purported to warn investors that Defendants "may not receive an [EUA] from [the] FDA for the use of lambda in COVID-19[,]" stating, in relevant part:

If we do not receive an EUA from [the] FDA, we will not be able to commercialize lambda in COVID-19 and may be required to conduct additional clinical trials for an EUA. Obtaining such an authorization is dependent upon a number of factors, which are not under our control. For example, the TOGETHER study [is] an investigator sponsored study conducted within a single country, Brazil. [The] FDA may require a company-sponsored study with data from additional patient populations.

Plainly, the foregoing risk warning was a generic, boilerplate provision that was not tailored to Eiger's actual known risks regarding issues with the conduct of the *TOGETHER* study. Moreover, the foregoing risk warning downplayed the FDA's likely refusal to accept the submission of a peginterferon lambda EUA.

33.     Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 24 *supra*, signed by the Individual Defendants.

34.     On March 17, 2022, Eiger issued a press release (the "March 2022 Press Release") announcing peginterferon lambda's successful results in the *TOGETHER* study, stating, *inter alia*, "that Peginterferon Lambda (Lambda) significantly reduced the risk of COVID-19-related hospitalizations or emergency room visits greater than six hours by 50% (primary endpoint) and death by 60% in the Phase 3 *TOGETHER* study," and that "Eiger plans to discuss the results with FDA and submit an EUA as soon as possible."

35.     In addition, the March 2022 Press Release quoted Defendant Cory, who stated, in relevant part:

These data demonstrate that a single subcutaneous injection of Lambda has the potential to be a convenient, 'one and done' treatment to reduce the severity of COVID-19, reducing hospitalizations and death – even in a vaccinated population . . . . With the continued global impact of COVID-19, we are encouraged by this data and look forward to supporting the global public health response . . . . [W]e look forward to discussing these results with [the] FDA and submitting an EUA application to add Lambda to the evolving armamentarium of COVID-19 therapeutics.

36.     The March 2022 Press Release also touted the *TOGETHER* study itself, stating that "[t]he Phase 3 *TOGETHER* study of Lambda is the second largest study to date of a COVID-19 therapeutic"; that "[f]inal analyses evaluated data from 1,936 patients, with 84% of patients having received at least a single dose of any COVID-19 vaccine"; and that "[f]inal analyses us[ed] a Bayesian analytic framework [that] showed[,]" among other things, that "Lambda [was] highly superior compared to placebo on the primary endpoint, with a probability of superiority of 99.91%, surpassing the prespecified superiority threshold of 97.6%[.]"

37.     With further respect to how the *TOGETHER* study was conducted, the  March 2022 Press Release stated, in relevant part:

Eligibility criteria required that all patients had laboratory-confirmed mild or moderate COVID-19, and were randomized within 7 days of symptom onset. High-risk criteria were defined by patients having at least one of the following, including but not limited to: > age 50, diabetes, hypertension, CV disease, lung disease, kidney disease, obesity, etc.  The study enrolled patients regardless of vaccination status or variant strain of SARS-CoV-2. The primary endpoint was a clinical outcome comparing hospitalizations or emergency room visits greater than six hours after a single subcutaneous injection of Lambda versus placebo.  The DSMB provided independent oversight for the trial and had previously discontinued other therapeutics due to observed futility. The *TOGETHER* study recruited from twelve sites in Brazil.

38.     On May 5, 2022, Eiger issued a press release announcing its first quarter 2022 financial results and providing a business update.  In addition to touting peginterferon lambda's results in the *TOGETHER* study, that press release represented, in relevant part, that Defendants were "[a]ctively engaging with [the] FDA" on the peginterferon lambda EUA while preparing for

its submission, and that the "[g]ating component for [the] EUA application is full data analyses from *TOGETHER* team which is in process and nearing completion[.]"

39.     The same press release also quoted Defendant Cory, who stated, in relevant part, that "[w]e are laser focused on executing our development and commercialization strategies and anticipate significant value-creating milestones this quarter, including the submission of an [EUA] application for lambda to treat COVID-19[.]"

40.     On August 4, 2022, Eiger issued a press release announcing its second quarter 2022 financial results and providing a business update, including, among other developments, that Defendants were "[a]ctively engaged with [the FDA] on [the] potential [EUA] application since announcement of topline data in March 2022 and have provided responses to all of [the] FDA's information requests during this time[.]"

41.     The statements referenced in ¶¶ 23-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants overstated Eiger's clinical and regulatory drug development expertise; (ii) Defendants failed to properly assess, and/or ignored issues with, the design of the *TOGETHER* study and its ability to support the peginterferon lambda EUA; (iii) there were issues with the conduct of the *TOGETHER* study and/or the *TOGETHER* study was not properly designed for the peginterferon lambda EUA in the current context of the pandemic; (iv) as a result, the FDA was unlikely to approve the submission of a peginterferon lambda EUA; (v) as a result of all the foregoing, peginterferon lambda's regulatory and commercial prospects for the treatment of COVID-19 were overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Truth Begins to Emerge**

42.     On September 6, 2022, during pre-market hours, Eiger issued a press release (the "September 2022 Press Release") "provid[ing] an update on the status of its planned request for [EUA] of peginterferon lambda for the treatment of patients with mild-to-moderate COVID-19 based on its most recent communications with the [FDA]." Specifically, the September 2022 Press Release stated, in relevant part, that "[f]ollowing a cooperative and extensive pre-EUA information exchange with FDA regarding the Phase 3 *TOGETHER* study of peginterferon lambda for COVID-19, the agency has indicated that it is not yet able to determine whether the criteria for the submission of an application and issuance of an EUA are likely to be met."

43.     On this news, Eiger's stock price fell $2.51 per share, or 29.36%, to close at $6.04 per share on September 6, 2022. Despite this decline in the Company's stock price, Eiger securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the *TOGETHER* study and peginterferon lambda's regulatory and commercial prospects as a treatment for COVID-19.

44.     For example, the September 2022 Press Release represented that "Eiger remains in active dialogue with [the] FDA and will provide additional information to the agency that the company believes could be supportive of an EUA."

45.     Likewise, the September 2022 Press Release advised investors that "[t]he company has recently generated new data and analyses from the *TOGETHER* study that it plans to discuss with FDA, including further statistical modeling and efficacy analyses of the study's primary and secondary endpoints in patients treated within three days of symptom onset"; that "[t]he endpoint of hospitalization due to COVID-19 and all-cause mortality for patients treated within three days of symptom onset is consistent with the endpoint used to authorize other therapeutics for emergency use"; and that "Eiger plans to provide new additional analyses of long-term follow-up

data, including rates of rebound and incidence of long COVID, as well as an indirect comparative analysis of mortality and hospitalizations in vaccinated patients when treated with peginterferon lambda compared to other therapeutics authorized for emergency use."

46.     The September 2022 Press Release also quoted Defendant Cory, who assured investors that Defendants "remain committed to continued engagement with the [FDA] to obtain the necessary alignment to submit our EUA application for peginterferon lambda," and that "[g]iven its unique mechanism of action and the ongoing need for effective COVID-19 therapeutics, making peginterferon lambda available for patients remains a priority for Eiger."

47.     The statements referenced in ¶¶ 42-46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants overstated Eiger's clinical and regulatory drug development expertise; (ii) Defendants failed to properly assess, and/or ignored issues with, the design of the *TOGETHER* study and its ability to support the peginterferon lambda EUA; (iii) there were issues with the conduct of the *TOGETHER* study and/or the *TOGETHER* study was not properly designed for the peginterferon lambda EUA in the current context of the pandemic; (iv) as a result, the FDA was unlikely to approve the submission of a peginterferon lambda EUA; (v) as a result of all the foregoing, peginterferon lambda's regulatory and commercial prospects for the treatment of COVID-19 were overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

48.     On October 5, 2022, during pre-market hours, Eiger announced that it would not seek an EUA application for peginterferon lambda, stating, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

[F]ollowing feedback from the [FDA], the company will not submit an [EUA] application of peginterferon lambda for the treatment of patients with mild-to-moderate COVID-19.

Following Eiger's press release on September 6, 2022, the company submitted a pre-EUA meeting request to [the] FDA, as well as additional morbidity and mortality outcomes data and analyses from the investigator-sponsored *TOGETHER* study. This included further statistical modeling and efficacy analyses of the study's primary and secondary endpoints and long-term follow-up data that the company believes continue to support the initial positive topline outcomes reported in March. In response, [the] FDA denied the request for a pre-EUA meeting. ***Citing its concerns about the conduct of the*** **TOGETHER** ***study, [the] FDA concluded that any authorization request based on these data is unlikely to meet the statutory criteria for issuance of an EUA in the current context of the pandemic.***

(Emphasis added.)

49.     On this news, Eiger's stock price fell $0.37 per share, or 5.01%, to close at $7.02 per share on October 5, 2022.

50.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Eiger securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Eiger securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

14

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Eiger or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Eiger;

- whether the Individual Defendants caused Eiger to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Eiger securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

15

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Eiger  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Eiger securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

58.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Eiger securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Eiger securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

63.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Eiger securities.  Such reports, filings, releases and statements were

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Eiger's finances and business prospects.

64.     By virtue of their positions at Eiger, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

65.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Eiger, the Individual Defendants had knowledge of the details of Eiger's internal affairs.

66.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Eiger.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Eiger's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Eiger securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Eiger's business and financial condition which were concealed by Defendants,

Plaintiff and the other members of the Class purchased or otherwise acquired Eiger securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

67.     During the Class Period, Eiger securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Eiger securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Eiger securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Eiger securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

68.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

70.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of Eiger, and conducted and participated, directly and indirectly, in the conduct of Eiger's business affairs.  Because of their senior positions, they knew the adverse non-public information about Eiger's misstatement of income and expenses and false financial statements.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Eiger's financial condition and results of operations, and to correct promptly any public statements issued by Eiger which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Eiger disseminated in the marketplace during the Class Period concerning Eiger's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Eiger to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Eiger within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Eiger securities.

74.     Each of the Individual Defendants, therefore, acted as a controlling person of Eiger. By reason of their senior management positions and/or being directors of Eiger, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Eiger to engage in the unlawful acts and conduct complained of herein.  Each of the Individual

Defendants exercised control over the general operations of Eiger and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

75.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Eiger.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 8, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS